IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PERFORMANCE DEALERSHIPS, § | | |
| L.P., d/b/a Performance Mitsubishi, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-05-4211 | |
| § | | |
| MITSUBISHI MOTORS NORTH § | | |
| AMERICA, INC., § | | |
|     Defendant. § | | |

**MEMORANDUM AND ORDER**

This case is before the Court on the Motion for Summary Judgment filed by Defendant Mitsubishi Motors North America, Inc. ("MMNA") [Doc. # 22], to which Plaintiff Performance Dealerships, L.P., d/b/a Performance Mitsubishi ("Performance") filed a response [Doc. # 27], and MMNA filed a reply [Doc. # 31]. The Court has carefully reviewed the parties' briefs and supporting evidence, as well as the full record in this case. Based on this review and the application of governing legal authorities, the Court concludes that Defendant's motion should be **granted**.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The facts that are material to MMNA's motion are undisputed. Performance, a Texas limited partnership owned almost exclusively by Robert Heckeroth, applied for authorization to establish a Mitsubishi automobile dealership in Humble, Texas.

Heckeroth has a degree in accounting from the University of Texas and has vast experience in the automobile industry. He previously owned a Mitsubishi dealership in Oklahoma and later owned one in Austin, Texas. He stated in his application that he had a personal net worth of approximately $3.5 million and could obtain additional capital if needed.

After MMNA approved the application, it entered into a Sales and Service Agreement dated December 4, 2003 (the "2003 Agreement") with Performance. In the 2003 Agreement, Performance released MMNA from all prior claims. Performance also waived the application of California Civil Code § 1542, thereby allowing Performance to release unknown claims as well as those of which it was aware. Performance also agreed not to change the usage of the dealership premises or facilities without MMNA's prior written approval.

Performance suffered financial losses at the dealership and, in July 2004, Performance's attorney wrote to MMNA claiming that Performance had been fraudulently induced to enter into the 2003 Agreement. MMNA responded, denying Performance's allegations and referring Performance to the terms of the 2003 Agreement.

Later that same month, Performance wrote to MMNA requesting permission to house its Saab service and parts department in the same building as the Mitsubishi

service and parts department – something that was precluded by the terms of the 2003 Agreement.  MMNA agreed to enter into a new agreement (the "2004 Agreement") which would allow Performance to combine its Saab and Mitsubishi operations for a period of 24 months, subject to Performance again releasing all claims against MMNA, both known and unknown.  *See* Exhibit A to 2004 Agreement, Exh. 8 to Motion for Summary Judgment.

MMNA sent Performance a copy of the proposed new agreement for review.  Heckeroth, who was represented by counsel, personally read and commented on the proposed contract.  As did the 2003 Agreement, the 2004 Agreement included a release by Performance of "all claims, demands, contracts and liabilities . . ., known and unknown, of any kind or nature whatsoever" and a waiver of the same California Code provision.  *See* 2004 Agreement, ¶ 13.  The 2004 Agreement also contained an express acknowledgment that the parties had engaged in good faith negotiations and that the terms in the 2004 Agreement are fair, reasonable, and not the result of coercion, threats, or intimidation of any kind.  *See* Exhibit A to 2004 Agreement.

Approximately two months after entering into the 2004 Agreement, Performance exercised its right under the contract to resign as an authorized Mitsubishi dealer.

In December 2005, Performance filed this lawsuit alleging fraud and other misconduct by MMNA during the 2002-03 time period.  Performance does not allege

any misconduct by MMNA after the execution of the 2004 Agreement. MMNA has moved for summary judgment based on the release contained in the 2004 Agreement. The motion has been fully briefed and is ripe for decision.

## II.   STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir.), *cert. denied*, 537 U.S. 824 (2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of

the nonmovant only when there is an actual controversy – "that is, when both parties have submitted evidence of contradictory facts." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Freeman v. Texas Dept. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004). The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).

If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. (quoting *Brenoettsy*, 158 F.3d at 911); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458 (5th Cir. 2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d

377, 380 (5th Cir. 1998); *Zucker ex rel. AIM Small Cap Growth Fund v. AIM Advisors, Inc.*, 371 F. Supp. 2d 845, 847 (S.D. Tex. 2005). "Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden at summary judgment." *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996); *see Roberson v. Alltel Information Services*, 373 F.3d 647, 654 (5th Cir. 2004); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris*, 144 F.3d at 380.

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Additionally, it is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *See Complaint of Port Arthur Towing Co.*, 42 F.3d 312, 318 (5th Cir.), *cert. denied*, 516 U.S. 823 (1995); *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). In the absence of proof, the Court will not assume that the nonmovant could

or would prove the necessary facts. *See Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998).

### III. VALIDITY AND APPLICABILITY OF THE RELEASE

#### A. General Validity

The 2004 Agreement provides that it "shall be governed by, and construed in accordance with, the laws of the State of California."[1] Under California law, potential claims between parties are extinguished by a written release. *See Skrbina v. Fleming Companies, Inc.*, 45 Ca. App. 4th 1353, 1366 (Cal. App. 1996). California Civil Code § 1542 limits a general release to known claims, but parties may expressly waive the application of § 1542. *See, e.g., Jefferson v. California Dept. of Youth Authority*, 28 Cal. 4th 299, 304 (Cal. 2002); *Winet v. Price*, 4 Cal. App. 4th 1159 (Cal. App. 1992).

In the 2004 Agreement, Performance released MMNA from "all claims, demands, contracts and liabilities . . ., known and unknown, of any kind or nature whatsoever" and waived § 1542 of the California Civil Code. *See* 2004 Agreement, ¶ 13. All of the alleged misconduct described in Plaintiff's complaint in this case

---

[1] The 2004 Agreement also provides that "all litigation between MMNA and [Performance] which may arise out of or in connection with this [2004 Agreement] or any transaction between them shall be subject to the exclusive jurisdiction of the courts of the State of California or of the federal courts sitting therein . . . ." 2004 Agreement, ¶ 12. Neither party, however, has raised this exclusive jurisdiction provision and requested that the case be transferred to California.

occurred prior to the execution of the 2004 Agreement and, therefore, the claims would generally be released under California law. Performance argues, however, that the release is unenforceable because it was fraudulently obtained, it was the result of economic duress, and it is unconscionable. Performance argues that, even if the release were enforceable, it does not apply to the claims based on fraud and on a breach of the duty of good faith and fair dealing.

### B. Fraud, Economic Duress, and Unconscionability

#### 1. Fraud

Plaintiff alleges that the 2004 Agreement is invalid because it was the result of fraud. To establish fraud under California law, the plaintiff must show (1) a misrepresentation; (2) knowledge that the misrepresentation was false; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage to the plaintiff. *See Gil v. Bank of America*, 136 Cal. App. 4th 848, 859 (Cal. App. 2006).

In this case, Plaintiff has failed to present evidence that MMNA made any misrepresentations regarding the release. Plaintiff alleges that an MMNA employee told him that the terms of the 2004 Agreement were the same as the terms of the 2003 Agreement. Comparison of the agreements reveals that the release language in the 2004 Agreement is the same as the release language in the 2003 Agreement. Indeed, it appears that the only difference between the two agreements is the addition of

Exhibit A in which MMNA provides its written authorization for Plaintiff to operate portions of his Saab business on the same premises as the Mitsubishi dealership. Plaintiff has also failed to present evidence that the MMNA employee made the alleged misrepresentation with the intent to defraud.

Moreover, Plaintiff cannot show as a matter of law that any alleged reliance on representations made by an MMNA employee was justified under the circumstances. The issue "is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience." *Kolodge v. Boyd*, 88 Cal. App. 4th 349, 373 (2001) (citations omitted). Heckeroth, through whom Plaintiff operated in negotiating and entering into the 2004 Agreement, is a well-educated, experienced businessman who, while represented by counsel, carefully read the 2004 Agreement prior to signing it. Even if he had not read the proposed 2004 Agreement, Heckeroth as the party on one side of a business transaction would not have been justified in relying on the statements made by an individual on the other side of the transaction particularly where, as here, he (Heckeroth) was represented by his own counsel. *See, e.g., Scognamillo v. Credit Suisse First Boston LLC*, 2005 WL 2045897 (N.D. Cal. Aug. 25, 2005) (citing *Kolodge*, 88 Cal. App. 4th at 373). A party cannot avoid a written release on the basis of unreasonable reliance. *See Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 423 (1996) (upholding

arbitration agreement where plaintiff claimed to have been induced not to read the contract before signing it).

Plaintiff has failed to present evidence which raises a genuine issue of material fact regarding the necessary elements of his fraud argument and, as a result, this argument regarding the invalidity of the 2004 release fails.

### 2.     Economic Duress

Plaintiff also argues that the release is invalid because it was the result of economic duress. A release may be held invalid on the basis of economic duress when a party is "subject to a wrongful act such as a threat and must succumb to the wrongdoers or face financial ruin." *Navellier v. Sletten*, 262 F.3d 923, 940 (9th Cir. 2001). In this case, Plaintiff has failed to present evidence that MMNA threatened it or Heckeroth or engaged in any related misconduct. Indeed, Plaintiff requested a new agreement that would permit it to house portions of his Saab operation together with similar portions of the Mitsubishi business. MMNA did not *threaten* Plaintiff; MMNA *acquiesced* to Plaintiff's request. In exchange for the new agreement requested by Plaintiff, MMNA required the same release in the 2004 Agreement that was contained in the 2003 Agreement. *Compare* 2003 Agreement, Exh. 3 to Motion for Summary Judgment, ¶ 13 *with* 2004 Agreement, ¶ 13. Although Plaintiff wanted to combine the Saab and Mitsubishi operations to reduce overhead, there is no evidence that it or

Heckeroth personally would have suffered economic ruin had MMNA not agreed to the proposal. Plaintiff has failed to raise a genuine issue of material fact to support his economic duress argument.

### 3.     Unconscionability

Plaintiff argues that the release is invalid because it is unconscionable. Under California law, a court can invalidate a release on the basis of unconscionability only where the release is unconscionable *both* procedurally, where the circumstances show oppression and surprise, *and* substantively, where the terms of the release itself are overly-harsh and one-sided. *See A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486-87 (Cal. App. 1982). Plaintiff asserts summarily that the release raises questions of fact that preclude summary judgment.

The uncontroverted evidence in the record establishes that Heckeroth is a well-educated businessman with years of experience in the automobile industry. He was represented by counsel at all relevant times. He requested a change in the 2003 Agreement to permit Plaintiff to lower its overhead, and MMNA agreed to the requested change. MMNA provided Heckeroth with a copy of the proposed 2004 Agreement, which Heckeroth admits having read before signing. The release is not hidden in the 2004 Agreement – indeed, it is in the same paragraph as the identical release in the 2003 Agreement. Plaintiff has not presented any evidence whatsoever

that the circumstances surrounding the execution of the 2004 Agreement and its release were oppressive, a surprise, or otherwise procedurally unconscionable. Indeed, the uncontroverted evidence is to the contrary.

Plaintiff has also failed to present evidence that the release is substantively unconscionable. The 2004 Agreement is the same as the 2003 Agreement with the addition of the terms of Exhibit A requested by Plaintiff. The release in both agreements is straightforward and clear. It not only cites the California code provision that is being waived, it quotes the provision fully. There is nothing in the release that is overly-harsh. Although the release is one-sided in MMNA's favor, the provision allowing Plaintiff to combine his business locations is equally one-sided in Plaintiff's favor and provides adequate consideration for the release.

Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding his claim that the release is unconscionable.

### C. Applicability of the Release

Plaintiff argues that the release, even if valid, does not apply to the fraud-based claims. Specifically, Plaintiff argues that the fraud claims were "not in existence" at the time the 2004 Agreement was executed, citing cases relating to when a fraud cause of action accrues for statute of limitations purposes. *See* Response, pp. 9-10. The accrual of a cause of action for statute of limitations purposes is not required for the

claim to exist as an unknown claim. *See, e.g., Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 979 (Cal. App. 2003) ("a claim accrues . . . upon the occurrence of the last event essential to the cause of action, *even if the plaintiff is unaware that a cause of action exists"*) (emphasis added). In this case, the release waives all claims, demands, contracts and liabilities, both known and unknown, of any kind. The fraud claims, all based on conduct in 2002 and early 2003, existed prior to the execution of the 2004 Agreement even if they allegedly had not accrued under the law for statute of limitations purposes. As a result, they could be – and were – released as unknown claims.

Additionally, the fraud claims in the Complaint were the subject of a letter from Plaintiff to MMNA in July 2004, prior to the time the 2004 Agreement was executed in September 2004. Plaintiff's argument that the release does not apply to Plaintiff's fraud-based claims because they were "not in existence" is not supported by the evidence or the law.

Plaintiff also argues that Texas law provides a statutory duty of good faith and fair dealing in franchise agreements and further provides that an agreement to waive the duty is void and unenforceable. Plaintiff, however, has asserted only a breach of an *implied* covenant of good faith and fair dealing, not a Texas law claim based on a violation of a *statutory* duty of good faith and fair dealing. Additionally, the release

and all other provisions in the 2004 Agreement are governed by California law, not Texas law. Accordingly, Plaintiff's argument that the release does not bar his claim for "Breach of Implied Covenant of Good Faith and Fair Dealing" – Count IV of the Complaint – is without merit.

## IV.  CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that the release contained in the 2004 Agreement is valid and applicable to the claims asserted in Plaintiff's complaint in this case. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 22] is **GRANTED**. The Court will issue a separate final order.

SIGNED at Houston, Texas, this **12th** of **April, 2006**.

_____
Nancy F. Atlas
United States District Judge